MUSLIMA SUBKHANGULOVA (DOWDY); DIANA SUBKHANGULOVA, a Minor Child, By and through her Guardian Ad Litem, G. ELVIN SMALL, Attorney at Law; and ALBINA SUBKHANGULOVA, Plaintiffs,
v.
GARY JOSEPH DOWDY, SR., Defendant.
No. COA06-1112
North Carolina Court of Appeals
Filed September 4, 2007
This case not for publication
The Twiford Law Firm, P.C., by John S. Morrison, and Baker, Jones, Daly, Murray, Carter, Daughtry, P.A., by Ronald G. Baker and Darlene G. Chambers, for Plaintiffs.
Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Adrienne E. Allison, for Defendant.
STEPHENS, Judge.
On 24 April 2001, Muslima Subkhangulova ("Muslima") and Gary Joseph Dowdy, Sr. ("Defendant") were married. Muslima had two children before marrying Defendant, but no children were born of her marriage to Defendant. On or about 20 July 2004, the couple separated. On 15 September 2004, Muslima filed a complaint in Dare County District Court seeking post separation support, alimony, divorce from bed and board, equitable distribution of the marital property, and interim distribution of the marital assets. In the complaint, Muslima alleged, inter alia, that the couple was married outside the United States "in the town of Yoshkar-Ola the Republic of Mari El" and that at the time of the wedding, "Defendant promised that upon bringing [Muslima] to the United States of America that he would fully and faithfully provide support for her and her two minor daughters, for at least ten years."
By a second complaint dated 18 February 2005 and filed in Dare County Superior Court, Muslima and her daughters, Albina Subkhangulova ("Albina") and Diana Subkhangulova ("Diana") (collectively "Plaintiffs"), brought causes of action against Defendant for assault, intentional infliction of emotional distress, seduction and alienation of affections, and breach of contract. Plaintiffs' complaint alleged, inter alia, that "[f]rom the summer 2002 to spring 2003, the Defendant approached [Albina] out of the presence of her mother and sister, and on numerous occasions made lewd and vulgar comments about . . . Albina's body . . . and . . . did in fact place his hands on Albina's [body] . . . in a rude and vulgar manner." The complaint alleged further that "[o]n numerous occasions, beginning in the Summer of 2002 and continuing up until July 20, 2004, the Defendant maintained a pattern of and practice of illicit sexual relations with the minor child Diana[.]" Additionally, the complaint stated that
[t]he Defendant on at least two occasions in 2004 struck [Muslima] in a violent, rude, and offensive manner: Once by grabbing [her] person by the throat and throwing her to the floor, straddling her body, and pinning her down as she cried for help from Diana[.]Secondly, by threatening to do her great bodily harm unless she engaged in sexual intercourse with the Defendant.
Finally, the complaint alleged that
[d]espite the obligations imposed on the Defendant by his agreement . . . and the laws of the United States of America, [through his sponsorship of Plaintiffs during their immigration into the United States,] the Defendant has willfully failed and refused to provide support to all Plaintiffs as [required] by law . . . despite his ability to do so.
Plaintiffs sought compensatory and punitive damages and attorneys' fees.
On 8 April 2005, Plaintiffs and Defendant purportedly entered into a settlement agreement ("the agreement"). By the terms of the agreement, Defendant agreed to pay $1,500,000.00 to Diana, $1,250,000.00 to Muslima, and $250,000.00 to Albina by noon on 31 May 2005. In exchange, Plaintiffs agreed that upon receipt of the payments from Defendant, they would file a voluntary dismissal with prejudice of the claims pending in Dare County Superior Court. Additionally, the parties acknowledged that the agreement was a
final and binding[] release and discharge from any and all claims, demands, actions, or suits at law or in equity, contract or tort, or of any kind or nature, in any manner arising out of the alleged personal injuries or alleged breach of contract suffered by the Plaintiffs as specified in the pleadings.
Furthermore, the agreement provided that
the pending litigation in both the District and Superior Courts of Dare County shall be stayed by Plaintiffs and all time periods are tolled, until June 1, 2005; if as of that date payment has not been made in full as provided in this agreement, then Plaintiffs are free to pursue all legal remedies in litigation to the same extent as if this agreement had not been executed and no tolling agreement existed. Provided, however, it is specifically understood that Plaintiffs shall be entitled to pursue enforcement of this agreement in law and at equity in addition to such remedies as are otherwise available to Plaintiffs under the pending litigation.
With regard to potential criminal proceedings for "various felonious charges" pending against Defendant in Dare County Superior Court, the parties agreed that
[a]s a result of this settlement, the Plaintiffs . . . will interpose no objection to the Defendant negotiating any lesser plea, on a single count or otherwise, and receiving a suspended sentence for the service of any active imprisonment, either in whole or in part, provided any judgment imposed will require counseling and treatment of the Defendant as a sex offender, and further provided, that any suspended sentence completely prohibits the Defendant from any contact whatsoever, direct or indirect, physically or through communication of any kind, personally or by a third party with the Plaintiffs, or any one of the Plaintiffs, except through their counsel. . . . [Additionally,] nothing in this agreement is to be construed in any way as making the settlement contingent upon the outcome of the criminal litigation. There are no representations that the Plaintiffs have complete control over the criminal litigation, that they will not cooperate fully with the District Attorney or other authorities, that they will not testify truthfully if called upon to do so, nor that they will not make themselves fully available to the District Attorney in this cause.
Finally, through the agreement, the parties consented that
[i]n the event that the terms of this agreement have not been complied with, a copy of this agreement shall be filed with the court in each pending civil litigation action. The parties further agree that this agreement shall form the basis of an appropriate judgment to be entered by the court in this action without further contest by either party. And it is stipulated that this document is in compliance with the North Carolina Rules of Civil Procedure as to a confession of judgment.
Upon a motion for approval, on 14 April 2005, the Honorable J. Richard Parker approved the settlement agreement as it pertained to Diana, after finding that the agreement was in the minor's "best interest[.]" Additionally, Judge Parker ordered "that the Motion for Approval of this Settlement, the Order, and all exhibits in support of the same, including the Settlement Agreement, now approved, be sealed until further Orders of this Court[.]"
Defendant failed to make any payments required by the agreement and, on 21 July 2005, Plaintiffs moved the trial court to unseal the court file and enter judgment against Defendant "for the sums set forth in the . . . Settlement Agreement[.]" On 14 November 2005, the Honorable Gary E. Trawick held a hearing on this motion, and that same day, Plaintiffs filed the agreement in Dare County Superior Court. After the hearing, Judge Trawick entered judgment against Defendant for the sums due Plaintiffs under the terms of the agreement. In the judgment, Judge Trawick found, inter alia, that
1. Plaintiff[]s and Defendant entered into a Settlement Agreement in this matter . . . .
. . . .
3. The Defendant has failed to comply with the terms of the Settlement Agreement and has failed to pay the sums called for therein.
4. In the Settlement Agreement the parties agreed that Plaintiffs shall be entitled to pursue enforcement of the Settlement Agreement.
5. The Settlement Agreement further provides that it may be treated as a Confession of Judgment and that the Court might enter Judgment thereon.
Judge Trawick then concluded that "[t]he Settlement Agreement, by its terms, is enforceable by this Court" and that "Plaintiffs are entitled to judgment in the amounts called for by the Settlement Agreement." Upon these findings and conclusions, the court ordered Defendant to pay the sums due Plaintiffs pursuant to the agreement.[1]
By motion dated 30 November 2005, pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure, Defendant moved the trial court for relief from Judge Trawick's judgment. Defendant asserted that he was entitled to relief from judgment for the following pertinent reasons:
3) That the Defendant was not instructed by his then counsel[2] to be present for the judicial review of the purported Settlement Agreement and was explicitly instructed by his then counsel not to appear in court on the date of entry of Judgment.
4) That prior to the November 14, 2005 hearing referenced above, the Defendant instructed his former counsel to resist the . . . enforcement of the Settlement Agreement.
5) That on February 17, 2005 Diana . . . recanted her statement that she was a victim of sexual assaults by Defendant . . . .
6) That further, evidence of this recantation of the charges, which formed the basis for the complaint, was provided to Defendant's former counsel on March 9, 2005 but that the Defendant was not so informed of said recantation prior to the approval of the settlement Agreement on April 14, 2005 or Defendant's execution of his signature on that facsimile dated April 8, 2005.
. . . .
8) That . . . Muslima . . . attempted to suborn perjury in the filing of this complaint and made false statements therein.
Defendant also alleged that the agreement was not properly executed, that he received inappropriate advice from his trial counsel because his trial counsel had a financial interest in the completion of the agreement, and that he did not understand the agreement would leave him exposed to criminal prosecution. This matter came on for hearing on 3 January 2006 in Dare County Superior Court before the Honorable Cy A. Grant. Following the hearing, by order entered 6 February 2006, Judge Grant denied Defendant's Rule 60(b) motion. Defendant appeals from Judge Grant's order. For the reasons set forth herein, we affirm the order of the trial court.
Defendant first argues that the trial court erred in denying his motion for relief from judgment pursuant to Rule 60(b)(1). Specifically, Defendant contends that the trial court failed to make sufficient findings of fact regarding the conduct of Defendant's trial counsel which Defendant contends constituted excusable neglect. We disagree.
Rule 60(b)(1) of the North Carolina Rules of Civil Procedure provides that "the court may relieve a party or his legal representative from a final judgment, order, or proceeding" if the moving party can show "[m]istake, inadvertence, surprise, or excusable neglect[.]" N.C. Gen. Stat. § 1A-1, Rule 60(b)(1) (2005). "Whether neglect is `excusable' or `inexcusable' is a question of law which `depends upon what, under all the surrounding circumstances, may be reasonably expected of a party' to litigation." JMM Plumbing & Utils., Inc. v. Basnight Constr. Co., 169 N.C. App. 199, 202, 609 S.E.2d 487, 490 (2005) (quoting Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 425, 349 S.E.2d 552, 555 (1986)). "A motion for relief under Rule 60(b) is addressed to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." Grant v. Cox, 106 N.C. App. 122, 124-25, 415 S.E.2d 378, 380 (1992) (citations omitted). This Court will find an abuse of discretion when the trial court's decision is "unsupported by reason and could not have been a result of competent inquiry[.]" Wiencek-Adams v. Adams, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992) (citation omitted).
When ruling on a 60(b) motion, "[t]he trial judge has the duty to make findings of fact, which are deemed conclusive on appeal if there is any evidence on which to base such findings." Briley v. Farabow, 348 N.C. 537, 547, 501 S.E.2d 649, 655 (1998) (citing Hoglen v. James, 38 N.C. App. 728, 248 S.E.2d 901 (1978)); see also Trent v. River Place, LLC, 179 N.C. App. 72, 632 S.E.2d 529 (2006) (holding that the trial court has a duty to make findings of fact when ruling on a 60(b) motion); but see Condellone v. Condellone, 137 N.C. App. 547, 550, 528 S.E.2d 639, 642 (recognizing that this "Court consistently has held: `Although it would be the better practice to do so when ruling on a Rule 60(b) motion, the trial court is not required to make findings of fact unless requested to do so by a party'") (citations omitted),disc. review denied, 352 N.C. 672, 545 S.E.2d 420 (2000). When required, "`findings of fact and conclusions of law must be made even on rulings resting within the trial court's discretion.'" See N.C. Indus. Capital, LLC v. Clayton, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (August 21, 2007) (COA06-732) (quoting Andrews v. Peters, 318 N.C. 133, 139, 347 S.E.2d 409, 413 (1986)). However, "when a trial court fails to make findings of fact with respect to the elements of Rule 60(b), the order will be reversed `unless there is evidence in the record sustaining findings which the trial court could have made to support such order.'" Parris v. Light, 146 N.C. App. 515, 521, 553 S.E.2d 96, 99 (2001) (quoting Gibson v. Mena, 144 N.C. App. 125, 128-29, 548 S.E.2d 745, 747 (2001)), disc. review denied, 355 N.C. 349, 562 S.E.2d 283 (2002).
Addressing the impact of an attorney's conduct on a party's ability to succeed on a Rule 60(b)(1) motion for relief from judgment because of excusable neglect, our Supreme Court has stated:
Clearly, an attorney's negligence in handling a case constitutes inexcusable neglect and should not be grounds for relief under the "excusable neglect" provision of Rule 60(b)(1). In enacting Rule 60(b)(1), the General Assembly did not intend to sanction an attorney's negligence by making it beneficial for the client and to thus provide an avenue for potential abuse. Allowing an attorney's negligence to be a basis for providing relief from orders would encourage such negligence and present a temptation for litigants to use the negligence as an excuse to avoid court-imposed rules and deadlines. . . . "Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free goodthe neglect would protect the client, and because the client could not suffer the lawyer would not suffer either."
Briley, 348 N.C. at 546-47, 501 S.E.2d at 655 (citations omitted). The Court in Briley thus concluded that "an attorney's negligent conduct is not `excusable neglect' under Rule 60(b)(1) and that in determining such, the court must look at the behavior of the attorney." Id. at 547, 501 S.E.2d at 655.
Here, based on our Supreme Court's decision in Briley, the trial court should have considered the conduct of Defendant's trial counsel. Further, the court had a duty to make findings of fact thereupon. However, under Parris, we may review the record to determine if there is any evidence upon which findings of fact could have been made to support the trial court's ultimate decision that Rule 60(b)(1) relief was not warranted. We conclude that there is evidence from the proceedings before the trial court to support the court's decision.
In his Rule 60(b) motion, Defendant alleged that his trial attorney (1) failed to instruct him "to be present for the judicial review of the purported Settlement Agreement and was explicitly instructed by his then counsel not to appear in court on the date of entry of Judgment[;]" (2) failed to inform Defendant of Diana's recantation of her allegations prior to the execution of the agreement; and (3) failed to explain the terms of the settlement to Defendant before Defendant signed the agreement. At trial, the evidence was conflicting as to whether Defendant's trial counsel properly reviewed the agreement with Defendant before obtaining his signature. Defendant also testified that his attorney told him if he signed the agreement, all criminal charges "would go away[,]" but failed to inform him that Diana had recanted her allegations. Defendant's attorney disputed both of these claims.
In his order denying Defendant's motion for relief, Judge Grant made the following relevant finding of fact:
8. Defendant has testified that [Defendant's trial counsel] never fully explained the Settlement Agreement to him but told him that the agreement settled everything including the criminal charges. [Defendant's] [a]ttorney . . . has denied that he made any such statement to Defendant or others but instead testified that he fully explained the agreement to Defendant.
The trial court's finding of fact number eight does not address all of the actions of Defendant's trial attorney that Defendant alleges constituted excusable neglect. From our review of the Record before us, however, we conclude that the evidence Defendant presented would provide support for findings of fact that the trial court could have made to establish negligence on the part of Defendant's trial counsel. Because negligent representation on the part of a party's attorney does not constitute excusable neglect under Rule 60(b)(1), the trial court did not err in denying Defendant's motion. See Briley, supra. Accordingly, this argument is overruled.
By his next assignment of error, Defendant contends the trial court erred by failing to include findings of fact or conclusions of law regarding Defendant's motion under Rule 60(b)(2). We disagree.
Pursuant to Rule 60(b)(2) of the North Carolina Rules of Civil Procedure, "the court may relieve a party or his legal representative from a final judgment, order, or proceeding" if there is "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]" N.C. Gen. Stat. § 1A-1, Rule 60(b)(2) (2005). "In order for evidence to be `newly discovered evidence' under these rules, it must have been in existence at the time of the trial, and not discoverable through due diligence." Broadbent v. Allison, 176 N.C. App. 359, 364, 626 S.E.2d 758, 763 (2006) (quoting Parks v. Green, 153 N.C. App. 405, 412, 571 S.E.2d 14, 19 (2002)), appeal dismissed and disc. review denied, 361 N.C. 350, 644 S.E.2d 4 (2007). We review a Rule 60(b) decision of the trial court for abuse of discretion. Sink v. Easter, 288 N.C. 183, 217 S.E.2d 532 (1975).
As discussed supra, there is conflicting authority regarding a trial court's duty to make unrequested findings of fact on a Rule 60(b) motion. However, even when required, if the "trial court fails to make findings of fact with respect to the elements of Rule 60(b), the order will [not] be reversed `[if] there is evidence in the record sustaining findings which the trial court could have made to support such order.'" Parris, 146 N.C. App. at 521, 553 S.E.2d at 99 (quoting Gibson, 144 N.C. App. at 128-129, 548 S.E.2d at 747). Therefore, although there are no findings of fact in Judge Grant's order specifically addressing this allegedly newly discovered evidence, we review the record to determine if there is evidence from which the trial court could have made findings of fact to support its ultimate determination.
Defendant argues that the trial court erred by failing to make findings of fact or conclusions of law regarding the failure of Defendant's trial counsel to inform Defendant, in March of 2005, that Diana had recanted her allegations. Defendant argues that Diana's recantation and his trial counsel's knowledge of the same constituted newly discovered evidence upon which relief should have been granted under Rule 60(b)(2). We disagree. The transcript of proceedings before the trial court establishes that on 17 February 2005, before he signed the agreement on 8 April 2005, Defendant learned that Diana was saying the allegations she had previously made against Defendant were not true. Since Defendant was aware of this evidence prior to signing the agreement and thus, prior to entry of the judgment on 14 November 2005, the evidence is not "newly discovered" under the plain meaning of the rule. This argument is overruled.
Defendant next argues the trial court's determination that Defendant's consent to the agreement was not induced by fraud is not supported by findings of fact in the trial court's order denying his Rule 60(b)(3) motion. Again, we disagree.
Rule 60(b)(3) of the North Carolina Rules of Civil Procedure provides that "the court may relieve a party or his legal representative from a final judgment, order, or proceeding" when there has been "[f]raud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]" N.C. Gen. Stat. § 1A-1, Rule 60(b)(3) (2005). "To obtain relief under Rule 60(b)(3), the moving party must 1) have a meritorious defense, 2) that he was prevented from presenting prior to judgment, 3) because of fraud, misrepresentation or misconduct by the adverse party." 2 G. Gray Wilson, North Carolina Civil Procedure § 60-8, at 392 (1995) (citing Square Constr. Co. v. Washington Metro. Area Transit Auth., 657 F.2d 68 (4th Cir. 1981)). "The `nearly identical provisions of our Rule 60(b) and Federal Rule 60(b) point to the Federal decisions for interpretation and enlightenment.'" Briley, 348 N.C. at 545-56, 501 S.E.2d at 655 (quoting Wiggins v. Bunch, 280 N.C. 106, 110, 184 S.E.2d 879, 881 (1971)). Our research reveals that to make a successful Rule 60(b)(3) motion, the moving party must demonstrate that fraud, misrepresentation, or misconduct on the part of an adverse party prevented the presentation of a meritorious defense. Square Constr. Co., supra. In this case, Defendant asserts on appeal that there was fraud, misconduct, or misrepresentation perpetrated by Muslima and Diana. He does not contend that this alleged conduct prevented him from asserting a meritorious defense. On the contrary, as discussed supra, the evidence before the trial court established that Defendant had evidence of Diana's alleged misconduct before he signed the agreement and before entry of the judgment enforcing the agreement. Therefore, Diana's conduct could not have prevented Defendant from asserting a meritorious defense. Furthermore, Defendant relies on an affidavit averring that on or about 19 April 2005, Muslima attempted to suborn perjured testimony from a mutual friend of the couple. This alleged testimony would have shown that the friend had witnessed Defendant assault Plaintiffs. Though the affidavit raises questions about Muslima's actions, no testimony from this potential witness was ever elicited. Moreover, because the alleged solicitation of perjury occurred after the parties had entered into the agreement and after the trial court approved the settlement as it pertained to Diana, Muslima's actions could have no bearing on a defense that the agreement was induced by fraud, misrepresentation, or misconduct. Defendant's Rule 60(b)(3) argument is overruled.
By his fourth argument, Defendant contends that the trial court erred in denying his Rule 60(b)(4) motion for relief from judgment. For the reasons set forth in Subkhangulova v. Dowdy, ___ N.C. App. ___, ___ S.E.2d ___ (Sept. 4, 2007) (COA06-1101) (unpublished), this argument fails.
Pursuant to Rule 60(b)(4), a trial court may relieve a party from a judgment imposed if "[t]he judgment is void[.]" N.C. Gen. Stat. § 1A-1, Rule 60(b)(4) (2005). "`A judgment is void only when the issuing court has no jurisdiction over the parties or subject matter in question or has no authority to render the judgment entered.'" Britt v. Britt, 168 N.C. App. 198, 203, 606 S.E.2d 910, 913 (2005) (quoting Burton v. Blanton, 107 N.C. App. 615, 616, 421 S.E.2d 381, 382 (1992)). On appeal in this case, Defendant "sets forth an abbreviated version of those arguments" contesting the validity of the parties' agreement which appear in Defendant's brief in the companion case of Subkhangulova v. Dowdy, supra. In essence, Defendant argues that because the agreement was not valid, the trial court's judgment enforcing the agreement was void, and therefore, he was entitled to relief under Rule 60(b)(4). For the reasons set forth in our opinion in the companion case, we hold that the agreement was valid, and thus, the trial court's entry of judgment upon the agreement was not void. Id.[3] Accordingly, Defendant was not entitled to relief from judgment under Rule 60(b)(4). This argument is overruled.
By his final assignment of error, Defendant asserts that this matter requires remand because there are no findings of fact or conclusions of law in Judge Grant's order which expressly address Defendant's Rule 60(b)(6) motion. We disagree.
Pursuant to Rule 60(b)(6) of the North Carolina Rules of Civil Procedure, "the court may relieve a party or his legal representative from a final judgment, order, or proceeding" for "[a]ny . . . reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b)(6) (2005). "This subsection serves as a `grand reservoir of equitable power' by which a court may grant relief from a judgment whenever extraordinary circumstances exist and there is a showing that justice demands it." Dollar v. Tapp, 103 N.C. App. 162, 163-64, 404 S.E.2d 482, 483 (1991) (quoting Oxford Plastics v. Goodson, 74 N.C. App. 256, 259, 328 S.E.2d 7, 9 (1985)).
When reviewing a trial court's equitable discretion under Rule 60(b)(6), our Supreme Court has indicated that this Court cannot substitute what it considers to be its own better judgment for a discretionary ruling of a trial court, and that this Court should not disturb a discretionary ruling unless it probably amounted to a substantial miscarriage of justice.
Surles v. Surles, 154 N.C. App. 170, 173 n. 1, 571 S.E.2d 676, 678 (2002) (citations and quotation marks omitted).
In this case, Defendant's motion for relief from Judge Trawick's order clearly references Rule 60(b)(6). Therefore, Judge Grant was on notice that Defendant was seeking relief under that provision. Addressing that particular motion, in his order denying Defendant's motion for relief, Judge Grant made the following relevant findings of fact:
1. Defendant is an educated man, having a high school diploma and a college degree from East Carolina University.
2. Until late November, 2005 Defendant was represented . . . by attorney Anthony Gay. Mr. Gay was selected and retained by Defendant. Defendant had previous experience with civil litigation arising from the operation of his . . . business and previous marriages.
. . . .
6. A settlement of the case was negotiated between Anthony Gay on behalf of the Defendant and attorney John Morrison on behalf of the Plaintiffs between the filing of this lawsuit in February 2005 and the signing of the Settlement Agreement by the Defendant on or about April 8, 2005.
. . . .
8. Defendant has testified that Anthony Gay never fully explained the Settlement Agreement to him but told him that the agreement settled everything including the criminal charges. Attorney Anthony Gay has denied that he made any such statement to Defendant or others but instead testified that he fully explained the agreement to Defendant.
9. In either case Defendant was furnished a copy of the Settlement Agreement, had the opportunity to read it and familiarize himself with its contents before signing it and, by his own admission, failed to do so.
. . . .
12. Defendant never objected to the terms of the settlement agreement until he learned that the District Attorney's office was not going to allow him a plea agreement on the criminal charges pending against him that would result in a probationary sentence.
Based on these findings, Judge Grant denied Defendant's Rule 60(b)(6) motion. Upon reviewing the trial court's findings of fact, we conclude that Judge Grant thoroughly considered the evidence before him, including Defendant's failure to read the agreement before consenting to the conditions contained therein, and that these findings of fact clearly address whether relief from judgment was justified. After a review of the evidence presented at the hearing and the findings of fact made by the trial court, we cannot say that Judge Grant's ruling "probably amounted to a substantial miscarriage of justice." Id. This argument is overruled.
The order of the trial court denying Defendant's Rule 60 motion is
AFFIRMED.
Judges McGEE and HUNTER concur.
Report per Rule 30(e).
NOTES
[1] Defendant appealed from Judge Trawick's 14 November 2005 judgment enforcing the settlement agreement. By an opinion filed 4 September 2007, this Court affirmed Judge Trawick's judgment. See Subkhangulova v. Dowdy, ___ N.C. App. ___, ___ S.E.2d ___ (Sept. 4, 2007) (COA06-1101) (unpublished).
[2] After the trial court entered judgment in favor of Plaintiffs, Defendant engaged different counsel to prosecute his Rule 60(b) motion. Upon denial of his Rule 60(b) motion, Defendant again engaged different appellate counsel.
[3] In the underlying case, we affirmed the judgment of the trial court because, although the agreement was not executed by its express terms, it is enforceable under basic contract principles.